UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SAM RALEV, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>PATRICK ROBINSON, JR., )<br>      Defendant. ) | CAUSE NO. 2:16-CV-350-JPK |

## OPINION AND ORDER

This matter is before the Court on Defendant Patrick Robinson, Jr's Motion to Enforce a Settlement. (DE 217). Plaintiff Sam Ralev filed a Response to Defendant's Motion to Enforce a Settlement (DE 221) and Defendant filed a Reply in Support of Motion to Enforce a Settlement (DE 223).[1]

**I.  Background**

The Court assumes familiarity with the myriad continuances and other procedural issues in this case. However, before moving on to the substance of the settlement negotiations, it is worth noting that the Court has time and again attempted to make accommodations for Plaintiff's circumstances and *pro se* status.[2] Nevertheless, all parties,

---

[1] Subsequent to the instant motion, Plaintiff filed a Motion to Reinstate Pretrial and Trial Conferences (DE 219) and a Motion for Summary Judgment (DE 227). Since the Court is granting Defendant's Motion to Enforce Settlement, these motions will be denied without prejudice to Plaintiff re-filing them in the event Defendant fails to fulfill the terms of the settlement.

[2] Defense counsel, while continuing to zealously represent their client, also attempted to work with Plaintiff towards a resolution of this matter in a courteous and professional manner.

including those proceeding *pro se*, are required to follow applicable rules. Those rules are meant "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

To allow this case to persist any longer would run contrary to a negotiated settlement and unduly prejudice Defendant. At an earlier point in this litigation, although admittedly at a time when this case had perhaps already run past a "just, speedy, and inexpensive determination," the Court allowed Plaintiff's counsel to withdraw. (DE 70). Before doing so, the Court cautioned Plaintiff that he had a right to object to his attorney's motion to withdraw, and that if the motion was granted he would be proceeding *pro se*, as there is no right to counsel in civil cases. (Transcript, 7/11/2019 at 4, DE 122). The Court also explained that Plaintiff would be bound by court rules, including the Federal Rules of Civil Procedure, even if he proceeded *pro se*. (*Id.* at 7). Despite all of this, Plaintiff agreed to his attorney's withdrawal. (*Id.* at 8). And, of course, this required resetting trial dates while Plaintiff attempted to obtain counsel. Numerous deadlines were missed, and perhaps most importantly Plaintiff failed to appear at the Final Pretrial Conference (DE 94), despite an explicit warning that such actions could result in sanctions, including dismissal of his claims (DE 75). While Plaintiff and his claims may not have warranted such actions, the Court attempted to recruit counsel out of perhaps an overabundance of caution, yet was unsuccessful in doing so. (DE 149). When Plaintiff did hire another attorney, that attorney also withdrew, after the Plaintiff filed a "Notice of Termination of Client/Attorney Relations." (DE 146, 149). Again, the deadlines for pretrial filings were moved. (DE 149). The day prior to the Final Pretrial Conference, the Court was notified

that the parties settled. (DE 216). While not dispositive of the Motion to Enforce a Settlement, there is little to suggest Plaintiff would provide the required cooperation to allow this matter to proceed to trial, even in the event the Court set it once again on the trial calendar.

The Defendant has presented the following facts in support of his Motion to Enforce a Settlement. (DE 217). The Court held a hearing (DE 226), and now finds not only that Defendant's asserted facts are true and accurate but also that Plaintiff himself indicated a desire to resolve this dispute with Defendant, *see* (Transcript, 10/18/2021 at 12:9-24, DE 229).

On Tuesday, July 6, 2021, Plaintiff made an offer to settle the matter for $25,000. (DE 217 at 12, Motion to Enforce a Settlement at Ex. A). The only qualification of the offer was that it expired at 5:00 PM that day. (*Id.*). At 1:07 p.m. that day, well before the deadline Plaintiff set forth, Defendant accepted Plaintiff's offer of settlement. (*Id.* at 10-11). Plaintiff confirmed receipt of the email sent by Defendant's counsel accepting the settlement. (*Id.* at 10). Subsequently, both Plaintiff and Defendant exchanged additional terms, none of which were accepted by the other side. Plaintiff wanted to add a future fund for lost wages, and a published settlement. (DE 217 at 15-16 (Motion to Enforce a Settlement at Exs. C-D). Defendant sought a release involving parties in addition to the named Defendant, among other things. (DE 217 at 13-14, Motion to Enforce a Settlement at Exs. B-C).

The hearing on this matter cleared up a few issues. First, Defendant, who was seeking a release, did not view the terms of that release as material to settlement. *See*

3

(Transcript, 10/18/2021, at 10:12-14, DE 229 ("[W]e are not saying that [ ] anything that is in the release, other than [ ] what was in the email is part of the essential terms of the contract.")). Second, Plaintiff agreed he did not "wish to use any language that would insinuate that [Defendant] -- or make him liable in any way that would affect his life or any type of language of that sort." (*Id.* at 12:15-18). Plaintiff also indicated that he understood that when Defendant accepted his offer, that would terminate this litigation. (*Id*. at 18:11-13).

## II.     Analysis

State law governs "[i]ssues regarding the formation, construction, and enforceability" of contracts, including agreements to settle federal lawsuits. *Pohl v. United Airlines, Inc.,* 213 F.3d 336, 338 (7th Cir. 2000); *see also Lewis v. Sch. Dist. #70*, 648 F.3d 484, 486 n.1 (7th Cir. 2011) ("Whether a settlement agreement is binding is an issue governed by the law of the state in which the parties executed the agreement."). Under Indiana law, "[a] meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Janky v. Batistatos,* 559 F. Supp. 2d 923, 929 (N.D. Ind. 2008) (quoting *Zimmerman v. McColley*, 826 N.E. 2d 71, 77 (Ind. Ct. App. 2005)). In cases where a purported acceptance "varies the terms of the offer," it "operates as a counteroffer." *Martinez v. Belmonte,* 765 N.E. 2d 180, 183 (Ind. Ct. App. 2002) (quoting I.*C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1034–35 (Ind. Ct. App. 1998)); *see also Janky,* 559 F. Supp. 2d at 929. Of course, once an offer is accepted, a binding contract exists that either party may enforce, absent defenses not at issue here. *See, e.g., Zimmerman,* 826 N.E.2d at 76 ("It is established law that if a party agrees to settle a

4

pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement."); *Bain v. Bd. of Trs. of Starke Memorial Hosp.*, 550 N.E.2d 106, 110 (Ind. Ct. App. 1990) (holding that settlement agreement is culminated once an offer has been accepted); *see also Pohl v. United Airlines, Inc.,* 110 F. Supp. 2d 829, 837 (S.D. Ind. 1999) ("If one party 'transmit[s] a clear and unambiguous settlement offer which [is] accepted by the [other party] ... the parties [have] reached a binding settlement agreement.'" (quoting *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982-83 (Ind. Ct. App. 1993)), *aff'd*, 213 F.3d 336 (7th Cir. 2000).

Plaintiff's subsequent "negotiations" clearly changed the terms of the deal, attempting to increase the amount of money he would receive. The potentially broad nature of Defendant's proposed release is another matter. The release sought to keep the deal but proposed additional language. This would only doom Defendant's efforts to enforce the settlement if such language concerned a *material* term. *See Janky*, 559 F. Supp. 2d at 930 (where an offer to settle was followed by a written mutual global release draft that added additional and material terms); *MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 757 n.2 (Ind. Ct. App. 2010) (distinguishing *Janky*); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 2004 WL 906118, at *4 (N.D. Ill. Apr. 28, 2004) ("If Steadfast wanted a confidentiality clause, it should have made it known during the negotiations."). An unresolved *immaterial* term, however, does not prevent the formation of a binding contract. *See Beverly v. Abbott Labs.*, 817 F.3d 328, 335-36 (7th Cir. 2016) (finding indemnification, cooperation, and future employment issues not material and enforcing handwritten settlement agreement between employer and employee)

5

(applying Illinois law); *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 508 (7th Cir. 2007) ("Terms addressing purely contingent matters are not necessarily material.") (applying Illinois law); *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001) ("lack of agreement on minor, immaterial terms . . . do not preclude a finding that a contract has been formed") (applying Illinois law). The mere fact that parties disagree on whether to include a certain provision in their written agreement does not make the issue material. *See Dillard*, 483 F.3d at 508 ("The materiality of additional written terms introduced after an . . . agreement is reached is not established simply by one party's intransigence or 'refusal to budge' on the new terms.").

Plaintiff attempts to make additional arguments concerning his capacity to enter a settlement contract and duress. However, Plaintiff has appeared before the Court on multiple occasions and cogently presented his arguments. At the hearing on Defendant's Motion to Enforce a Settlement, Plaintiff indicated he understood that an acceptance of this offer would terminate the litigation. *See* (Transcript, 10/18/2021, at 18:11-13, DE 229). Plaintiff was likely concerned about his ability to proceed to trial *pro se* after terminating his relationship with counsel. Nevertheless, many cases are settled on the courthouse steps at the eve of trial. Even seasoned attorneys get nervous, or perhaps see the weakness in their cases more clearly. To allow any of this to stand in the way of an agreed upon settlement would mean parties were constantly able to change the terms of a settlement. Settlements, and litigation, would never end.

There was an offer of settlement by Plaintiff and an unambiguous and unqualified acceptance of that offer by Defendant. The parties agreed on all material terms: the

6

termination of this litigation in exchange for $25,000. That settlement will be enforced, without any additional terms. Upon proof of payment of the settlement, this case is to be dismissed with prejudice. Defendant's Motion to Enforce a Settlement (**DE 217**) is **GRANTED**, and Ralev's pending motions (**DE 219, 227**) are **DENIED as moot**. Defendant is to serve notice of payment of settlement funds by April 29, 2022. This case will thereafter be dismissed with prejudice.

So ORDERED this 29th day of March, 2022.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT

cc:   *Pro se* Plaintiff by first class and certified mail, return receipt requested